US Pony Holdings, LLC v Fashion Footwear LLC (2025 NY Slip Op 03004)

US Pony Holdings, LLC v Fashion Footwear LLC

2025 NY Slip Op 03004

Decided on May 15, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 15, 2025

Before: Kern, J.P., Kennedy, González, Shulman, O'Neill Levy, JJ. 

Index No. 655022/22|Appeal No. 4369-4370|Case No. 2024-01708 2024-05789|

[*1]US Pony Holdings, LLC, Plaintiff-Appellant-Respondent,
v
Fashion Footwear LLC, Defendant-Respondent-Appellant. [And a Third-Party Action.] 

Meister Seelig & Fein PLLC, New York (Kevin Fritz of counsel), for appellant-respondent.
Oved & Oved LLP, New York (Aaron Solomon of counsel), for respondent-appellant.

Order, Supreme Court, New York County (Melissa A. Crane, J.), entered on or about January 19, 2024, which, to the extent appealed from, granted defendant's motion for summary judgment to the extent of finding that plaintiff improperly terminated the parties' license agreement, but denied defendant's motion for summary judgment against plaintiff on its first counterclaim for a declaratory judgment and on its second for breach of contract, unanimously modified, on the law, to grant defendant's motion in its entirety and it is declared that plaintiff's termination was void ab initio and that the license agreement remained in full force and effect, and otherwise affirmed, without costs. Order, same court and Justice, entered on or about August 22, 2024, which, to the extent appealed from, denied plaintiff's motion for summary judgment dismissing defendant's first, second, and fourth counterclaims, unanimously affirmed, without costs.
Defendant established that plaintiff's December 9, 2021 notice, purporting to terminate the parties' trademark license agreement, did not comply with section 23.3 of the license agreement. That section allowed plaintiff to terminate the license agreement "[i]n the event that [plaintiff] or any of its affiliates . . . enters into an agreement that sells [50%] or more of . . . outstanding shares" of Iconix Brand Group, Inc. (Iconix). This provision permitted termination only if plaintiff "or any of its affiliates" entered into an agreement, and that agreement sold 50% or more of the Iconix shares. Plaintiff concedes that there was no agreement to which plaintiff "or any of its affiliates" were parties that sold 50% or more of Iconix's shares. A tender offer from Iconix Sub Merger Inc., which was not an affiliate of plaintiff or of Iconix at the time of the sale, was an agreement to sell in the sense that, upon acceptance, it led to agreements with members of the public to sell their Iconix shares. Yet none of the resulting agreements were agreements by plaintiff "or any of its affiliates" to sell shares.
Plaintiff could not invoke equitable estoppel based on defendant's apparent acquiescence to the December 9, 2021 termination. Defendant did not have "knowledge of the real facts" that formed the basis of the purported termination: that neither plaintiff nor its affiliates sold 50% or more of Iconix's outstanding shares (Wallace v BSD-M Realty, LLC, 142 AD3d 701, 703 [2d Dept 2016]). Although plaintiff had issued a press release informing the general public of the tender offer, and although the true facts surrounding the tender offer, including that plaintiff and its affiliates were not selling 50% or more of Iconix's shares, were available on the Securities and Exchange Commission website, plaintiff identifies no evidence suggesting that defendant's duty to investigate these facts was ever triggered (see Guedj v Dana, 11 AD3d 368 [1st Dept 2004]). A party claiming estoppel "may not, even innocently, mislead an opponent and [*2]then claim the benefit of [its] deception" (Triple Cities Constr. Co. v Maryland Cas. Co., 4 NY2d 443, 448 [1958] [internal quotation marks omitted]). Here, each statement and action by defendant on which plaintiff purportedly relied stemmed from plaintiff's December 9, 2021 assertion that Iconix entered into "an agreement that sells [50%] or more of [Iconix's] outstanding shares." As such, even if plaintiff made that assertion in good faith, plaintiff could not invoke reliance on defendant's acknowledgments to claim estoppel (see Triple Cities, 4 NY2d at 448). Thus, plaintiff neither raised a question of fact concerning its estoppel defense on defendant's motion nor established an estoppel defense on its own motion.
As to defendant's damages, defendant is entitled to out-of-pocket expenses, including those concerning its inventory. Pursuant to section 22.3 of the license agreement, which specifically addresses remedies "for a breach by [plaintiff]," plaintiff's liability is limited to "direct out-of-pocket monetary damages, if any, actually suffered." Although section 18.7 provides that defendant "is not entitled . . . to receive any form of compensation . . . , indemnification or severance payment of whatever nature," that section also contains a parenthetical that excludes damages "as a result of an unlawful termination" from the limitations of that section. The phrase "[i]n particular" beginning section 18.8 indicates that the section, which provides that plaintiff "shall have no liability . . . in respect of . . . any remaining inventory of" defendant, identifies a subcategory of damages limited by section 18.7. Therefore, taken together, sections 18.7, 18.8 and 22.3 permit defendant to recover its out-of-pocket expenses resulting from plaintiff's improper termination of the license agreement.
Plaintiff's contention that defendant's damages are limited by sections 16.3 and 16.7 of the license agreement is unavailing. We agree with the motion court's holding that these sections "do not relate to recovery for unlawful termination and therefore are inapplicable." Section 16 of the license agreement, entitled "Indemnity; Insurance," details the parties' respective indemnification provisions if a third party prevails in an action against either party, as well as plaintiff's obligation to maintain insurance. By contrast, section 18.7 falls under the heading "Rights Upon Termination" and section 22.3 falls under the heading "Governing Law." These provisions therefore control as they specifically address defendant's remedies in the event of plaintiff's breach (see Cronos Group Ltd. v XComIP, LLC, 156 AD3d 54, 60-61 [1st Dept 2017]).
Plaintiff's argument that defendant failed to submit evidence of any damages is unpreserved because plaintiff first raised it in a reply brief below. In any event, we find it unavailing.
The court properly denied plaintiff's request for attorneys' fees under the license agreement, since plaintiff was not the prevailing [*3]party.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 15, 2025